[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-11140

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JESSIE ANTHONY PARKER,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:18-cr-00247-TFM-B-1

————————————————

Before JILL PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Jessie Anthony Parker appeals the 300-month sentence imposed after a jury convicted him of possessing with intent to distribute less than 50 kilograms of marijuana, possessing with intent to distribute more than 500 grams of cocaine, and possessing a firearm as a convicted felon. On appeal, he argues that his sentence is substantively unreasonable. After careful review, we affirm.

## I.

In September 2016, law enforcement officers learned from confidential informants that Parker was selling large quantities of marijuana. When officers searched an apartment and two homes connected to Parker, they found approximately 1.7 kilograms of marijuana and one kilogram of cocaine as well as multiple firearms.

A grand jury charged Parker with one count of possession with intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2 (Count One); one count of possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2 (Count Two); one count of using and carrying a firearm during a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three); and two counts of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Counts Four and Five).

A jury convicted Parker of the marijuana and cocaine offenses (Counts One and Two) as well as one count of possessing a firearm as a convicted felon (Count Four). But it acquitted him of the remaining charges of using or carrying a firearm in connection with a drug trafficking offense (Count Three) and one count of possessing a firearm as a convicted felon (Count Five).

Before Parker's sentencing, a probation officer prepared a presentence investigation report ("PSR"). The PSR reported Parker's criminal history. In June 2002, when he was 19 years old, Parker was found in possession of marijuana for purposes other than personal use. He was charged in Alabama state court with possession of marijuana in the first degree. *See* Ala. Code § 13A-12-213. In November 2002, he was adjudged a youthful offender.[1] Parker was initially sentenced to 90 days of bootcamp and three years of probation. But his probation was later revoked, and he was sentenced to three years in custody.

---

[1] Under Alabama law, a court may in its discretion grant youthful offender status to a defendant who is under 21 at the time he committed an offense. *See United States v. Jews*, 74 F.4th 1325, 1330 (11th Cir. 2023); *State v. R.R.A.*, 842 So. 2d 42, 44 (Ala. Crim. App. 2002). If a defendant is "adjudged a youthful offender" and the underlying charge is a felony, the maximum custodial sentence that may be imposed is three years' imprisonment. Ala. Code § 15-19-6(a)(4). And a youthful offender may be placed on probation "for a period not to exceed three years." *Id.* § 15-19-6(a)(2). In addition, an adjudication as a youthful offender "shall not be deemed a conviction of [a] crime," but if a defendant is later "convicted of [a] crime, the prior adjudication as youthful offender shall be considered." *Id.* § 15-19-7.

After being adjudicated as a youthful offender, Parker was charged two more times with first-degree possession of marijuana. In December 2002 and in February 2003, he was charged after being found in possession of marijuana for other than personal use. In June 2003, he entered guilty pleas in two criminal cases arising out of the December 2002 and February 2003 arrests. The two cases were consolidated for sentencing purposes. In each case, he received a 10-year split sentence with 18 months in jail followed by five years of probation.

Around the time these sentences were imposed, Parker was charged in federal district court with possessing a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c). He pleaded guilty to this charge. The district court imposed a sentence of 60 months' imprisonment to be followed by a 60-month term of supervised release.

Parker had his supervised release revoked twice because he continued to engage in marijuana-related offenses. In December 2010, approximately two years into his term of supervised release, Parker was arrested for trafficking marijuana in violation of Alabama law, a charge which Alabama later dropped. The district court revoked his supervised release and sentenced him to 41 months' imprisonment to be followed by a 36-month term of supervised release. In September 2013, approximately seven months into the second term of supervised release, Parker was charged with first-degree possession of marijuana. Alabama later dropped this charge as well. The district court revoked Parker's

supervised release for a second time and sentenced him to 19 months' imprisonment with no term of supervised release. In February 2015, Parker was released from custody. He committed the offenses at issue in this case approximately 18 months later.

In addition to setting forth Parker's criminal history, the PSR addressed Parker's guidelines calculations for his instant offenses. For purposes of the Sentencing Guidelines, the PSR grouped together his three offenses. *See* U.S. Sent'g Guidelines Manual § 3D1.2(c). It then applied a sentencing enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), because Parker had three previous convictions for serious drug offenses. The three predicate offenses were: (1) the youthful offender adjudication for the first-degree possession of marijuana offense that occurred in June 2002, (2) the conviction for first-degree possession of marijuana that occurred in December 2002, and (3) the conviction for first-degree possession of marijuana that occurred in February 2003. After applying the ACCA enhancement, the PSR calculated Parker's guidelines range as 360 months to life on Counts Two and Four and 120 months on Count One.[2]

At the sentencing hearing, the district court applied the ACCA enhancement and adopted the PSR's guidelines calculation.

---

[2] Given the quantity of marijuana involved, the statutory maximum sentence for Count One was 120 months' imprisonment. The PSR also reflected that Parker faced a statutory maximum life sentence on the cocaine offense in Count Two because that offense involved more than 500 grams of cocaine and Parker committed the offense "after a prior conviction for a serious drug felony." 21 U.S.C. § 841(b)(1)(B).

The court ultimately imposed a total sentence of 360 months' imprisonment, which consisted of 360 months on Counts Two and Four and 120 months on Count One, with all sentences to run concurrently.

Parker later filed a motion to vacate his sentence under 28 U.S.C. § 2255, alleging that he received ineffective assistance of counsel. He asserted that his trial counsel provided ineffective assistance because counsel failed to challenge the ACCA enhancement on the ground that Parker's Alabama youthful offender adjudication was not a criminal conviction and did not qualify as an ACCA predicate. The district court agreed, granted the § 2255 motion, vacated Parker's sentence, and directed that he be resentenced.

Before the resentencing, the probation officer prepared an updated PSR. The updated PSR again grouped together all three of Parker's offenses, but this time it applied no ACCA enhancement. But it applied a career-offender enhancement because in this case Parker was convicted of a controlled substance offense and he had at least two previous felony convictions for controlled substance offenses (the first-degree marijuana convictions for the offenses that occurred in December 2002 and February 2003). *See* U.S.S.G § 4B1.1. After applying the career-offender enhancement, the

24-11140                Opinion of the Court                7

updated PSR calculated his guidelines range as 360 months to life for Count Two and 120 months for Counts One and Four.[3]

At the second sentencing hearing, the court adopted the updated PSR's guidelines calculation. Parker asked the court for a downward variance and to impose a sentence of between 120 and 137 months, which was what his guidelines range would have been without a career-offender enhancement. He argued that applying the career-offender guideline here would result in a sentence that was unreasonably harsh in light of the sentencing factors set forth at 18 U.S.C. § 3553(a).[4]

He argued that a downward variance would avoid unwarranted sentencing disparities. He pointed to research from the Sentencing Commission showing that district courts imposed within guideline-range sentences in powder-cocaine cases where the

---

[3] Because the ACCA enhancement no longer applied, the statutory maximum Parker faced on the firearm conviction was 10 years' imprisonment.

[4] Under § 3553(a), a district court is required to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

defendant was a career offender only about 20% of the time. And he suggested that a downward variance would be appropriate in his case because it was a "garden variety drug case." Doc. 176 at 9. He further argued that a downward variance was appropriate here given that his two predicate convictions that triggered the career-offender enhancement involved relatively small quantities of marijuana. He asked the court to consider the shifting status of and attitudes towards marijuana, noting that the drug had been legalized in many states.

Parker also asked the court to consider the relatively harsh conditions under which he had thus far served his sentence. He spent 20 months in a federal prison that was on a 23-hour-a-day lockdown due to the COVID-19 pandemic. And while his § 2255 motion was pending, he had been transferred from a federal prison to a local jail where he had been incarcerated for 18 months. He stated that the conditions at the jail were particularly harsh and that he had no opportunity to participate in vocational, educational, or rehabilitation programs while at the jail. In addition, Parker's friends and family submitted letters to the court attesting to his good character and his devotion to his family.

The court declined Parker's request for a downward variance and imposed a total sentence of 360 months. This sentence consisted of 360 months on Count Two and 120 months on Counts One and Four, all to run concurrently. The court explained that it was imposing this sentence given the seriousness of Parker's offenses, the need to provide just punishment, and the need to

adequately deter criminal conduct. The court also discussed Parker's history and characteristics, observing that he had a "very lengthy record." Doc. 176 at 26. It noted that although Parker had previously received lenient treatment, he continued to get into trouble. The court acknowledged that laws governing marijuana were changing. But it stated that when Parker committed the predicate offenses, he had violated the law.

This is Parker's appeal.

## II.

We review the substantive reasonableness of a district court's sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

## III.

Parker argues that his 360-month sentence is substantively unreasonable. We will reverse a sentence for substantive unreasonableness "only if[] we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted). Importantly, "the weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016). In addition, although there is no presumption of reasonableness, "[w]e ordinarily expect that a sentence falling within the guideline range will be reasonable, and

a sentence imposed well below the statutory maximum penalty in-dicates reasonableness." *United States v. Woodson*, 30 F.4th 1295, 1308 (11th Cir. 2022) (internal quotation marks omitted). The party challenging the sentence bears the burden of showing that it is sub-stantively unreasonable. *United States v. Boone*, 97 F.4th 1331, 1338–39 (11th Cir. 2024).

Parker argues that applying the career-offender guideline here yielded an unreasonable sentence. He criticizes the career-of-fender guideline, saying it "uses a methodology which is the antith-eses of the usual fact driven approach" because a defendant's base offense level and criminal history category "are set on [a] *per se* ba-sis" without looking to the "unique facts of the case." Appellant's Br. 13. But Parker does not dispute that he qualified for a career-offender enhancement. Instead, his argument on appeal is that af-ter calculating his guidelines range based on the career-offender en-hancement, the district court, when weighing the § 3553(a) factors, should have granted a downward variance.

Parker disagrees with how the district court weighed the § 3553(a) factors. He says that the district court gave too much weight to certain factors that supported imposing a sentence within the guidelines range and too little weight to other factors that would have supported a downward variance. But the decision about how much weight to assign a particular factor is committed to the sound discretion of the district court. *See Croteau*, 819 F.3d at 1310.

Here, the district court had discretion to weigh the § 3553(a) factors as it did. Parker's criminal conduct in this case was serious. He possessed over a kilogram of cocaine as well as over a kilogram of marijuana and intended to distribute both controlled substances. In addition, he possessed a firearm as a convicted felon. On top of that, Parker had a lengthy criminal history. The record reflected that, on multiple occasions, Parker completed a custodial sentence for a drug or firearm offense and then quickly returned to selling marijuana. In addition, we note that Parker's sentence was at the low end of the advisory guidelines range and well below the statutory maximum of life that he faced, which further supports the conclusion that his sentence was reasonable. *See Woodson*, 30 F.4th at 1308.

To be sure, Parker points to the circumstances of his predicate offenses as well as the data about the frequency of downward variances in other career-offender cases involving controlled substance offenses to argue that he should have received a shorter sentence. But after considering these arguments, we are not left with the definite and firm conviction that the district court committed a clear error of judgment when it weighed the § 3553(a) factors. *Irey*, 612 F.3d at 1190. Accordingly, we affirm.

**AFFIRMED.**